BOB L. OLSON, ESQ.
Nevada Bar No. 3783
KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
Email: olsonb@gtlaw.com

*Attorneys for Park Central Plaza 32, LLC*

Electronically Filed August 31, 2011

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

PARK CENTRAL PLAZA 32, LLC

Debtor.

Case No. BK-S-11-14153-BTB

Chapter 11

**SUPPLEMENT TO MOTION FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT AND RELEASE AGREEMENT WITH METEJEMEI, LLC PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**Date of Hearing: September 6, 2011
Time of Hearing: 1:30 p.m.**

Park Central Plaza 32, LLC ("Park Central"), Debtor and Debtor in Possession ("Debtor"), submits this Supplement to Motion for Entry of an Order Approving the Settlement and Release Agreement with METEJEMEI, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Supplement").

///

///

129624.010200 419,520,663 1 LV

Subsequent to the filing of the Motion for Entry of an Order Approving the Settlement and Release Agreement with METEJEMEI, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("the Motion") (Doc No. 174), all parties have executed the Settlement Agreement referenced therein.   A true and correct copy of the executed Settlement Agreement is attached hereto as **Exhibit 1.**   The parties have also agreed to the form and content of a proposed order appointing a receiver which is attached hereto as **Exhibit 2** and a proposed order terminating the automatic stay which is attached hereto as **Exhibit 3**.

Dated this 31st day of August, 2011.

GREENBERG TRAURIG, LLP


By: ___*/s/ Bob L. Olson*_____
BOB L. OLSON, ESQ.
Nevada Bar No. 3783
KARA B. HENDRICKS, ESQ.
Nevada Bar No. 7743
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada  89169
Telephone:  (702) 792-3773
Facsimile:   (702) 792-9002

*Attorneys for Park Central Plaza 32, LLC*

129624.010200 419,520,663 1 LV

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that a true and correct copy of the foregoing was served this 31st day of

4    August, 2011 via the Court's ECF System to the persons as listed below:

5    ATHANASIOS E. AGELAKOPOULOS on behalf of U.S. Trustee U.S. TRUSTEE - LV -
      11
6    athanasios.agelakopoulos@usdoj.gov

7    LAUREL E. DAVIS on behalf of Creditor METEJEMEI, LLC.
      ldavis@fclaw.com, mhurtado@fclaw.com

8

9    MATTHEW L. JOHNSON on behalf of Debtor PARK CENTRAL PLAZA 32, LLC
      shari@mjohnsonlaw.com, mjohnson@mjohnsonlaw.com

10   KENT F. LARSEN on behalf of Interested Party NEVADA STATE BANK
      kfl@slwlaw.com, cjm@slwlaw.com
11

12   U.S. TRUSTEE - LV - 11
      USTPRegion17.lv.ecf@usdoj.gov
13

14                                                 _____/s/ Joyce Heilich_____
15                                                 an employee of Greenberg Traurig, LLP

16

17

18

19

20

21

22

23

24

25

26

27

28

Greenberg Traurig, LLP
Suite 400 North, 3773 Howard Hughes Parkway
Las Vegas, Nevada 89109
(702) 792-3773
(702) 792-9002 (fax)

129624.010200 419,520,663 1 LV

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of the 8th day of August, 2011, among PARK CENTRAL PLAZA 32, LLC, a Nevada Limited Liability Company ("Park Central"), and Infinity Plus Investments, Inc.; Crest Ridge, LLC, Juli M. Koentopp, Brian Spilsbury and Kevin Spilsbury (collectively "Guarantors"), on the one hand, and METEJEMEI, LLC, a Nevada Limited Liability Company ("METEJEMEI"), on the other hand. The Agreement is based upon the following facts:

### Recitals

A.    Park Central and Nevada State Bank ("NSB") entered into that certain Acquisition and Development Loan Agreement, dated February 10, 2004, whereby NSB agreed to provide Park Central with a loan up to the amount of $5,931,000.00 (the "Loan"). Pursuant to subsequent modifications, the Loan was increased to $25,162,488.40, which is the current outstanding, unpaid principal balance.

B.    As security for the Loan, Park Central provided NSB with a Deed of Trust and Security Agreement with Assignment of Rents and Fixture Filing (Acquisition and Development), made effective on February 10, 2004 (the "Deed of Trust and Assignment of Rents"). Pursuant to the Deed of Trust and Assignment of Rents, Park Central granted NSB a security interest in certain real property with a commonly known address of 5700-5990 Losee Road, North Las Vegas, Nevada 89081 (the "Property"). Park Central also granted NSB with an absolute assignment of rents, issues, income, revenues, royalties and profits derived from the Property, as more fully described in the Deed of Trust and Assignment of Rents (collectively, the "Rents").

C.    Additionally, Guarantors executed a written Guaranty of the Loan, effective as of February 10, 2004 ("Guaranty").

D.    On January 15, 2011, the Loan matured pursuant to its terms. On February 28, 2011, NSB provided Park Central with written notice of default, demanding payment of $25,424,490.00, consisting of principal in the amount of $25,162,488.40 and accrued interest in the amount of $262,001.60, for a total of $25,424,490.00, on or before by March 10, 2011.

E.    On March 11, 2011, METEJEMEI acquired all right, title and interest of NSB under the Loan Agreement, Loan, the Deed of Trust and Assignment of Rents, all related loan documents, and the obligations secured thereby.

F.    On March 18, 2011, METEJEMEI provided Park Central with written notice of an Event of Default under the Deed of Trust and Assignment of Rents, and enforcement of its security interest in rents pursuant to NRS 107A.220 ("Rents Enforcement").

G.    Subsequent to the Rents Enforcement, Park Central made the following payments: (i) Matthew Johnson & Associates, $40,000; (ii) Greenberg Traurig, $66,719.57; (iii) Crest Ridge, $38,627.07; (iv) Infinity, $38,627.07; and (v) Jolley Urga Wirth & Woodbury, $10,000.

1



H.      On March 23, 2011, Park Central filed a petition for relief under chapter 11 of title 11 of the United States Code, as Case No. BK-S-11-14153-BTB ("Bankruptcy Case.")

I.      On April 19, 2011, METEJEMEI commenced <u>METEJEMEI, LLC v. Crest Ridge, LLC, et al</u>, Case No. A-11-639646-B ("Guarantor Action"), to enforce the Guaranty of the Loan.

J.      On April 29, 2011, as Docket No. 60; and on June 6, 2011, as Docket No. 122; the Bankruptcy Court issued its Orders ("Cash Collateral Orders") allowing Park Central to use METEJEMEI's Cash Collateral, subject to the stated conditions.

K.      In conjunction with the Bankruptcy Case, Park Central disclosed that security deposits paid by tenants of the Property ("Property Security Deposits") were deposited into the Park Central bank account and expended, rather than kept in a segregated account.

L.      Park Central owns certain furniture, fixtures and equipment located in the premises at the Property previously leased by Timbers ("Timbers FF&E"), and Park Central asserts METEJEMEI's security interest in the non-fixtures portion of the FF&E has lapsed.

M.      The parties to this Agreement, having participated in extensive settlement discussions, have resolved all of their disputes, including the Bankruptcy Case, the Guarantor Action and each of the matters set forth above in the Recitals (collectively "Disputes"), and they wish to enter into a compromise and settlement as more particularly set forth in this Agreement.

NOW, THEREFORE, the parties agree as follows:

## SECTION 1
## Events Occurring Prior to the Release and Dismissal Effective Date

1.1     This Settlement Agreement is subject to Bankruptcy Court approval, and it shall be fully enforceable upon entry of an Order granting approval ("Bankruptcy Approval Order"), which shall be effective upon entry by the Court.

1.2     At the time of Bankruptcy Court approval of this Settlement Agreement, METEJEMEI shall be entitled to entry of a separate Order granting METEJEMEI relief from the automatic stay to pursue its contractual and state law rights and remedies (which include non-judicial foreclosure and ex parte appointment of a receiver) with respect to the Property ("Lift Stay Order"), and the Lift Stay Order shall be effective upon entry by the Court.

1.3     Upon entry of the Bankruptcy Approval Order and the Lift Stay Order, Park Central shall sign all documents necessary to evidence its consent to the ex parte appointment of a receiver, pending METEJEMEI's foreclosure sale. The proposed Order granting ex parte appointment of a Receiver is attached as Exhibit 1.

1.4     Within five business days' after entry of the Bankruptcy Approval Order, Park Central shall cooperate to change management of the Property to a management company of METEJEMEI's

LAS/LDAVIS/121456.1/029705.0001

choice. Until that date, Park Central shall remain in possession and control of the Property, pursuant to the terms and conditions of the Cash Collateral Orders.

1.5     Books and Records:  Within five business days' after entry of the Bankruptcy Approval Order, Park Central will provide METEJEMEI, or its designated agent, with all documents and information, electronic or otherwise, related to the ownership, management and leasing of the Property, including, but not limited to, all construction contracts, construction warranties, construction plans and construction documents related to Park Central's construction of improvements on the Property; leases and vendor contracts.  Park Central will make all reasonable efforts to obtain the construction documents from WalMart and deliver them to METEJEMEI.

1.6     Park Central, its principals, agents and Guarantors shall not bid at METEJEMEI's non-judicial foreclosure sale of the Property ("Foreclosure Sale"), nor will they assist or encourage any other person or entity to bid at METEJEMEI's Foreclosure Sale.

1.7     METEJEMEI will proceed to conclude its Foreclosure Sale as soon as reasonably possible, and there will not be any unreasonable postponement of the Foreclosure Sale.  The Foreclosure Sale shall be concluded by March 4, 2012.

1.8     The Bankruptcy Case shall remain pending until the Release and Dismissal Date.

1.9     The Guarantor Action shall be held in abeyance, pending the Foreclosure Sale, and it will be dismissed, with prejudice, pursuant to the Stipulation attached as Exhibit 2, on the Release and Dismissal Date.

1.10    The Release and Dismissal Date shall be the earliest to occur of the first business day after the Foreclosure Sale or March 4, 2012.

## SECTION 2
## Bankruptcy Case Matters

2.1     Unsecured Claims: No later than one business day after METEJEMEI's Foreclosure Sale, Park Central shall pay from METEJEMEI's cash collateral all unsecured claims in the Bankruptcy Case, except insider claims and Property Security Deposit claims, which claims are estimated in the amount of $11,441.61.  Prior to the payment of said claims, Park Central shall provide METEJEMEI with a listing, by creditor name and amount, as well as all supporting invoices and documentation for each claim, after which METEJEMEI will authorize the payment.  Except as set forth in Section 2.2, such payments would not include the claims of Park Central's Insiders, Crest Ridge and Infinity.

2.2     Payments to Crest Ridge and Infinity:

(a)     METEJEMEI will pay to Crest Ridge, LLB the sum of $50,000, as and for pre-petition commissions and fees, on the Release Effective Date.  Park Central, its Managing Members and guarantors shall indemnify and hold METEJEMEI, its agents and members harmless from any claims arising from this payment.

3

      (b)    METEJEMEI will pay to Infinity Plus Investments, LLC the sum of $50,000, as and for pre-petition commissions and fees, on the Release Effective Date. Park Central, its Managing Members and guarantors shall indemnify and hold METEJEMEI, its agents and members harmless from any claims arising from this payment.

    2.3    <u>Tenant Improvement Claim</u>: The Bankruptcy Court has Ordered China A Go Go to provide Park Central with documentation in support of its request for reimbursement of tenant improvement expenses in the amount of $45,600. METEJEMEI has received the documentation and on August 5, 2011, it authorized payment from METEJEMEI's cash collateral.

    2.4    <u>Personal Property Tax Claim</u>: METEJEMEI will pay the personal property tax claim of $23,313.91 ("Personal Property Tax Claim") from its cash collateral on the date of entry of the Bankruptcy Approval Order. Park Central and METEJEMEI will work together to address payment of the Personal Property Tax Claim, and to the extent that the prior owner of the Timbers FF&E is required to pay the Personal Property Tax Claim, Park Central will make the appropriate demands upon the prior owner of the Timbers FF&E and cooperate with METEJEMEI in any such collection efforts.

    2.5    <u>Payment of Professionals</u>:

      (a)    <u>Matthew Johnson & Associates</u>: The Bankruptcy Court did not approve the employment of this firm as special litigation counsel, and the Court advised counsel that METEJEMEI's cash collateral could not be used to pay fees and costs incurred for services rendered regarding matters adverse to METEJEMEI or for any purpose without METEJEMEI's consent. Additionally, METEJEMEI asserts that the $40,000 retainer paid to this law firm is METEJEMEI's collateral, based upon the Rents Enforcement. Pursuant to this Settlement, the $40,000 retainer paid to this law firm shall be paid to METEJEMEI no later than the date of entry of the Bankruptcy Approval Order.

      (b)    <u>Greenberg Traurig</u>: Contingent upon METEJEMEI receiving: (i) the pre-petition invoices which support the amounts paid to this firm pre-petition; and (ii) all invoices generated by this firm, post-petition, this firm may retain its pre-petition retainer in the amount of $66,719.57. This law firm shall not be paid any further amounts from METEJEMEI's cash collateral. In the event that Greenberg Traurig is required to incur any attorney's fees and costs to implement this settlement, then said fees and costs shall be paid by Park Central and/or the Guarantors. Except for the retainer of $66,719.57, METEJEMEI's cash collateral shall not be used to pay any amount to Greenberg Traurig.

    2.6    <u>Security Deposit Obligations</u>: Park Central shall transfer to METEJEMEI all post-petition security deposits ("Security Deposits") on the Release and Dismissal Effective Date. METEJEMEI will not require Park Central to repay to METEJEMEI the dollar amount of Security Deposits that was expended by Park Central prior to filing the Bankruptcy Case.

    2.7    <u>Pre-Petition Rents</u>:

       (a)     Crest Ridge was paid $38,627 and Infinity was paid $38,627, for a total of $77,256.14. In conjunction with this settlement, these amounts will not be repaid to METEJEMEI; and

       (b)     Park Central warrants and represents that any payments to Insiders (as that term is defined by the Bankruptcy Code) within the one year period prior to the filing of the Bankruptcy Case did not exceed the amount of $1,000.

    2.8    <u>Payment Of U.S. Trustee Fees</u>: METEJEMEI will pay the quarterly fees due the Office of the U.S. Trustee, commencing on the date of entry of the Bankruptcy Approval Order through and including the Release and Dismissal Date, from available cash collateral and/or rents generated from the Property.

## SECTION 3
## Events Occurring on the Release and Dismissal Effective Date

    3.1    <u>Title to Furniture, Fixtures & Equipment</u>: Park Central shall convey to METEJEMEI all right, title and interest in and to the furniture, fixtures and equipment listed on the attached <u>Exhibit 3</u>, free and clear of all liens and encumbrances, on the Release and Dismissal Effective Date, pursuant to the Bill of Sale attached as <u>Exhibit 4</u>.

    3.2    <u>Bank Accounts</u>: Park Central will pay to METEJEMEI, or its designated agent: (a) the balance remaining in the DIP Account; and (b) the segregated Property Security Deposits.

## SECTION 4
## A & L Ventures Litigation

    4.1    <u>Indemnification</u>: Effective upon entry of the Bankruptcy Court Approval Order, Park Central and the Guarantors shall indemnify and hold harmless METEJEMEI, its agents and members from any claims arising from the litigation commenced by <u>A & L Ventures, Inc. v. Park Central Plaza 32, LLC, et al.</u>, as Case No. A 10-607691-B, in the Eighth Judicial District Court, Clark County, Nevada ("A & L Ventures Litigation").

    4.2    <u>Assignment of Recovery</u>: METEJEMEI acknowledges that any recovery obtained by Park Central and/or the Guarantors in the A & L Ventures Litigation shall be the property of Park Central and/or the Guarantors.

## SECTION 5
## Mutual Releases

    5.1    Park Central, on behalf of itself and its members, forever releases and discharges:

        METEJEMEI, and its members, their predecessor in interest, their past and present affiliates, partners, joint venturers, heirs, successors, assigns, contractors, subcontractors, officers, directors, shareholders, employees, agents, attorneys and insurers (in their individual and

representative capacities) from any and all claims, demands, losses, damages, actions, causes of action, suits, debts, promises, liabilities, obligations, liens, costs, expenses, attorneys' fees, indemnities, subrogations (contractual or equitable) or duties, of any nature, character or description whatsoever, whether known or unknown, fixed or contingent, accrued or not yet accrued, matured or not yet matured, anticipated or unanticipated, asserted or unasserted, arising from or related to, directly or indirectly, the Disputes.

5.2     METEJEMEI, on behalf of itself and its members, forever releases and discharges:

Park Central, and its members, their past and present affiliates, partners, joint venturers, heirs, successors, assigns, contractors, subcontractors, employees, agents, attorneys, representatives and insurers (in their individual and representative capacities) from any and all claims, demands, losses, damages, actions, causes of action, suits, debts, promises, liabilities, obligations, liens, costs, expenses, attorneys' fees, indemnities, subrogations (contractual or equitable) or duties, of any nature, character or description whatsoever, whether known or unknown, fixed or contingent, accrued or not yet accrued, matured or not yet matured, anticipated or unanticipated, asserted or unasserted, arising from or related to, directly or indirectly, the Disputes.

5.3     Park Central and METEJEMEI acknowledge that they have been advised by their own legal counsel in connection with the granting of the releases contained in this Agreement and has read and is familiar with the provisions of California Civil Code § 1542, which provides as follows:

A general release does not extend to the claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the Park Central.

5.4     Park Central and METEJEMEI acknowledge that they may have sustained claims, damages or losses that are presently unknown and unsuspected and that any such claims, damages or losses as were sustained may give rise to additional claims, damages or losses in the future that are not now anticipated.  They acknowledge that this release has been negotiated and agreed upon in light of these factors and they expressly waive any rights they may have under California Civil Code § 1542 as well as under any other state or federal statute or common law principle of similar effect.

5.5     Park Central and METEJEMEI acknowledge that they may later discover material facts in addition to, or different from, those which they now know or believe to be true with respect to the Disputes, or the negotiation, execution or performance of this Agreement.  They further acknowledge that there may be future events, circumstances or occurrences materially different from those they know or believe likely to occur.  It is the intention of the parties to fully, finally and forever settle and release all claims, differences relating to the Disputes.  The releases provided in

6

this Agreement shall remain in full effect notwithstanding the discovery or existence of any such additional or different facts or occurrence of any such future events, circumstances or conditions.

5.6     The provisions of this Section 5 shall be effective on the Release and Dismissal Date.

## SECTION 6
## Indemnification

6.1     Park Central indemnifies and holds harmless METEJEMEI, its members, predecessor in interest, past and present subsidiary corporations, parent corporations, affiliates, partners, joint venturers, heirs, successors, assigns, contractors, subcontractors, officers, directors, shareholders, employees, agents, attorneys and insurers (in their individual and representative capacities) from any and all claims asserted against any of them as a result of, or in connection with, any action or other proceeding brought, directly or indirectly, on behalf of, in the name of, or by anyone claiming standing through, METEJEMEI contrary to the provisions of the releases provided in Subsection 5.1.

6.2     METEJEMEI indemnifies and holds harmless Park Central, its members, past and present affiliates, partners, joint venturers, heirs, successors, assigns, contractors, subcontractors, employees, agents, attorneys, representatives and insurers (in their individual and representative capacities) from any and all claims asserted against any of them as a result of, or in connection with, any action or other proceeding brought, directly or indirectly, on behalf of, in the name of, or by anyone claiming standing through, Park Central contrary to the releases provided in Subsection 5.2.

6.2     The provisions of this Section 6 shall be effective on the Release and Dismissal Date.

## SECTION 7
## Covenant Not to Sue

7.1     Effective upon entry of the Bankruptcy Court Approval Order, the parties agree that they will not commence any action against any party or Releasee, based directly or indirectly on any released claim.

7.2     The provisions of this Section 7 shall be effective on the date the Bankruptcy Court enters the Bankruptcy Approval Order.

## SECTION 8
## Representations, Covenants and Warranties
## by Park Central

8.1     Park Central represents, covenants and warrants to METEJEMEI, which representations, covenants and warranties shall survive after the Release and Dismissal Effective Date:

1.      All of the Recitals are true and correct;

2.      Park Central has not assigned or transferred to any person any

7

matter released under this Agreement or any part or portion of any matter released under this Agreement.

3.    Park Central has all required power and authority to enter into and perform this Agreement.

8.2    The provisions of this Section 9 shall be effective on the date the Bankruptcy Court enters the Bankruptcy Approval Order.

### SECTION 9
### Representations, Covenants and Warranties
### of METEJEMEI

9.1    METEJEMEI represents, covenant and warrants to Park Central, which representations, covenants and warranties shall survive the Release and Dismissal Effective Date:

1.    All of the Recitals are true and correct;

2.    METEJEMEI has not assigned or transferred to any person any matter released under this Agreement or any part or portion of any matter released under this Agreement;

3.    METEJEMEI has all required power and authority to enter into and perform this Agreement.

9.2    The provisions of this Section 10 shall be effective on the date the Bankruptcy Court enters the Bankruptcy Approval Order.

### SECTION 10
### Purpose of Compromise and Settlement

The parties have each entered into this Agreement solely for the purpose of settling and compromising the Disputes and nothing contained in this Agreement or its performance shall be deemed to be an admission or acknowledgment of: liability; the existence of damages; or the amount of any damages relating to the Disputes.

### SECTION 11
### Substituted Contract

This Agreement is a substituted contract and not an executory accord. This Agreement replaces and supersedes all prior agreements or contracts relating to the subject matter of the Disputes and all claims, including tort claims, of any nature relating to the subject matter of the Disputes. In the event of the breach of this Agreement by any party, the remedies of the non-breaching parties shall be limited to enforcement of this Agreement, and compensatory damages for breach of this Agreement.

8

## SECTION 12
## Arbitration

Any controversy or claim arising out of or relating to this Agreement or its alleged breach shall be settled by binding and final arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules and judgment on the award rendered by the arbitrators may be entered in any court of competent jurisdiction.

Unless otherwise agreed in writing by the parties, any arbitration proceeding shall be held by three (3) arbitrators appointed by the American Arbitration Association. Any arbitration proceeding shall be conducted in Las Vegas, Nevada.

Such arbitration shall be the sole and exclusive remedy available to the parties. The arbitrators shall limit discovery to the bare minimum necessary and essential to the prompt resolution of the arbitration.

## SECTION 13
## Binding Effect

This Agreement shall inure to the benefit of and be binding upon the parties and their respective heirs, successors and assigns. Except as specifically provided in Sections 4 through 7 and 25 of this Agreement, this Agreement is not intended to create, and shall not create, any rights in any person who is not a party to this Agreement.

## SECTION 14
## Waiver

Neither the failure nor any delay on the part of any party to exercise any right, remedy, power or privilege under this Agreement shall operate as a waiver of that right, remedy, power or privilege. No waiver of any right, remedy, power or privilege with respect to any particular occurrence shall be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence.

## SECTION 15
## Time of the Essence

Time is of the essence of this Agreement and all of its terms, provisions, conditions and covenants.

## SECTION 16
## Entire Agreement

This Agreement contains the entire agreement between the parties and may not be changed or terminated orally but only by a written instrument executed by the parties after the date of this Agreement.

9

LAS/LDAVIS/121456.1/029705.0001

## SECTION 17
## Construction

The terms and conditions of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any party. The parties acknowledge that each of them has reviewed this Agreement and has had the opportunity to have it reviewed by their attorneys and that any rule or construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement, including its exhibits or any amendments.

## SECTION 18
## Partial Invalidity

If any term of this Agreement or the application of any term of this Agreement should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants and conditions of this Agreement, and all of its applications, not held invalid, void or unenforceable, shall continue in full force and effect and shall not be affected, impaired or invalidated in any way.

## SECTION 19
## Attorneys' Fees

In any action or proceeding to enforce the terms of this Agreement or to redress any violation of this Agreement, the prevailing party shall be entitled to recover as damages its attorneys' fees and costs incurred, whether or not the action is reduced to judgment. For the purposes of this provision, the "prevailing party" shall be that party who has been successful with regard to the main issue, even if that party did not prevail on all the issues.

## SECTION 20
## Governing Law and Forum

The laws of the State of Nevada applicable to contracts made or to be wholly performed there (without giving effect to choice of law or conflict of law principles) shall govern the validity, construction, performance and effect of this Agreement. Any lawsuit to interpret or enforce the terms of this Agreement shall be brought in the Bankruptcy Court for the Bankruptcy Case.

## SECTION 21
## Necessary Action

Each of the parties shall do any act or thing and execute any or all documents or instruments necessary or proper to effectuate the provisions and intent of this Agreement.

## SECTION 22
## Counterparts

This Agreement may be executed in any number of counterparts, each of which when duly executed and delivered shall be an original, but all such counterparts shall constitute one and the same agreement. Any signature page of this Agreement may be detached from any counterpart

10

without impairing the legal effect of any signatures, and may be attached to another counterpart, identical in form, but having attached to it one or more additional signature pages. This Agreement may be executed by signatures provided by facsimile or .pdf methods, which facsimile or .pdf signature pages shall be as binding and effective as original signature pages.

## SECTION 23
### Notices

23.1    Any and all notices and demands by or from any party required or desired to be given under this Agreement shall be in writing and shall be validly given or made if served either personally or if deposited in the United States mail, certified or registered, postage prepaid, return receipt requested. If such notice or demand is served by registered or certified mail in the manner provided, service shall be conclusively deemed given upon receipt or attempted delivery, whichever is sooner.

23.2    Any notice or demand to Park Central shall be addressed to Park Central as follows:

> Infinity Plus Investments, LLC
> c/o Juli Koentopp-Hammack
> 9115 W. Russell, Suite 120
> Las Vegas, NV 89148
>
> Crest Ridge, LLC
> c/o Brian Spilsbury and Kevin Spilsbury
> 4375 Polaris Avenue, Suite #4
> Las Vegas, NV 89103
>
> With a copy to:
>
> Bob L. Olson, Esq.
> Greenberg Traurig, LLP
> 3773 Howard Hughes Parkway, Suite 400N
> Las Vegas, NV 89169

23.3    Any notice or demand to METEJEMEI shall be addressed to METEJEMEI as follows:

> METEJEMEI, LLC
> c/o Tom Elardi
> 3411 Las Vegas Blvd. South
> Las Vegas, NV 89109
> Email: tee@casinoroyalehotel.com
>
> With a copy to:

11

Michael W. Kern
Piercy, Bowler, Taylor & Kern
6100 Elton Avenue, Suite 1000
Las Vegas, NV 89107
Email: mkern@pbtk.com

Laurel R. Davis, Esq.
Fennemore Craig, P.C.
300 South Fourth Street, Suite 1400
Las Vegas, NV 89101
Email: ldavis@fclaw.com

    23.4    Any party may change its address for receiving notices or demands by a written notice given in the manner provided in this Section, which notice of change of address shall not become effective, however, until its actual receipt by the other parties.

**SECTION 24**
**Non-Disparagement**

    24.1    During the five (5) years following the date of this Agreement, Park Central shall not make any remarks disparaging the conduct or character of METEJEMEI, its members, or its past, present and future employees, agents, representatives or their successors and assigns.

    24.2    During the five (5) years following the date of this Agreement, METEJEMEI shall make any remarks disparaging the conduct or character of Park Central, its members, or its past, present and future employees, agents, representatives or their successors and assigns.

**SECTION 25**
**Miscellaneous**

    25.1    The captions appearing at the commencement of the sections of this Agreement are descriptive only and for convenience in reference to this Agreement and shall not define, limit or describe the scope or intent of this Agreement, nor in any way affect this Agreement.

    25.2    Masculine or feminine pronouns shall be substituted for the neuter form and vice versa, and the plural shall be substituted for the singular form and vice versa, in any place or places in this Agreement in which the context requires such substitution or substitutions.

PARK CENTRAL PLAZA 32, LLC

INFINITY PLUS INVESTMENTS, LLC

By: _____
       Juli Koentopp, Manager

12

LAS/LDAVIS/121456.1/029705.0001

CREST RIDGE, LLC

By: _____
    Brian Spilsbury, Manager

By: _____
    Kevin Spilsbury, Manager

METEJEMEI, LLC

By: _____
    Tom Elardi, Managing Member

GUARANTORS:

INFINITY PLUS INVESTMENTS, LLC

By: _____
    Juli Koentopp, Manager

CREST RIDGE, LLC

By: _____
    Brian Spilsbury, Manager

By: _____
    Kevin Spilsbury, Manager

_____
Juli M. Koentopp

_____
Brian Spilsbury

_____
Kevin Spilsbury

# EXHIBIT 2

1 | **ORDR**
FENNEMORE CRAIG, P.C.
2 | Laurel E. Davis (No. 3005)
David W. Dachelet (No. 6615)
3 | Suite 1400 Bank of America Plaza
300 South Fourth Street
4 | Las Vegas, Nevada 89101
Telephone: (702) 692-8000
5 | Facsimile: (702) 692-8099
Email: ldavis@fclaw.com
6 | ddachelet@fclaw.com

7 | Attorneys for Plaintiff
METEJEMEI, LLC

8 |

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

* * *

METEJEMEI, LLC, a Nevada limited liability company,

              Plaintiff,

vs.

PARK CENTRAL PLAZA 32, LLC, a Nevada limited liability company,

              Defendant.

Case No.:

Dept. No.:

**ORDER APPOINTING RECEIVER**

Pursuant to the "Verified Complaint" (the "Complaint") of Plaintiff METEJEMEI, LLC ("Plaintiff"), the "Verified Ex Parte Application for Appointment of Receiver ("the Application"), the "Affidavit in Support of Application for Appointment of Receiver" (the "Affidavit"), and the Defendant's Consent to Ex Parte Appointment of Receiver ("Consent"), and other good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1.      APPOINTMENT OF RECEIVER: Michael W. Kern, CPA, of Piercy Bowler Taylor & Kern (the "Receiver"), and his designated agents, is hereby appointed Receiver in this action. Such appointment shall be effective upon the filing of this Order. No Oath of Receiver and no bond shall be required.

2.      POSSESSION OF PROPERTY BY RECEIVER: The Receiver shall have and

1    take immediate and exclusive possession, custody and control of all of PARK CENTRAL

2    PLAZA 32, LLC's (the "Defendant's") real and personal, tangible and intangible[1] property

3    including, without limitation, all land, buildings and structures, leases, movable personal

4    property, any related business operated by Defendant (whether such business be managed by

5    Defendant or its agents) and all monies therefrom, equipment, fixtures, furnishings, records,

6    inventory, assets, royalties, rents, receivables, accounts, deposits, equities, and profits (hereafter

7    collectively referred to as the "Property");

8        3.    POSSESSION OF MONEY BY RECEIVER: The Receiver shall take possession

9    of, and receive from all depositories, banks, brokerages and otherwise, any money on deposit in

10    such institutions belonging to or arising from the operation of the Property, whether such funds be

11    in accounts titled in the name of Defendant or not, in accordance with the Settlement Agreement

12    approved by the United States Bankruptcy Court in Defendant's bankruptcy (the "Settlement

13    Agreement"),[2] and is empowered to open or close any other accounts.  Receiver shall deposit

14    monies collected and received in connection with the receivership estate at federally-insured

15    banking institutions or savings associations.  Monies coming into the possession of the Receiver

16    and not expended for any purposes herein authorized shall be held by the Receiver pending

17    further orders of this Court.

18        4.    AUTHORITY AND POWER OF RECEIVER: The Receiver is hereby given the

19    power and authority usually held by Receivers and reasonably necessary to accomplish the

20    purpose of this Receivership including, without limitation, the following:

21        a.    To take possession of the Property.

22        b.    To take possession of all bank and other deposit accounts of the Defendant; to

23    open, transfer and change all bank and trade accounts relating to the Property, so that all

24    such accounts are in the name of the Receiver; and to make disbursements in payment of

---

25        [1] Pursuant to the parties' Settlement Agreement, the definition of "Property" in this Order
does <u>not</u> include the lawsuit entitled <u>A & L Ventures, Inc. v. Park Central Plaza 32, LLC, et al.</u>,

26    as Case No. A 10-607691-B, in the Eighth Judicial District Court, Clark County, Nevada ("A & L
Ventures Litigation"), or any recovery obtained by Defendant in the A & L Ventures Litigation.

27

28        [2] Defendant's bankruptcy was filed before the United States Bankruptcy Court for the
District of Nevada, Case No. BK-S-11-14153-BTB.

1    expenses incurred by the Receiver in accordance with this Order;

2    c.    To take possession and control of all the records, correspondence, insurance

3    policies, books and accounts of Defendant and the Property which refer to the Property,

4    the ongoing construction of any uncompleted buildings and improvements on the

5    Property, the lease and/or conveyance of any completed buildings and improvements on

6    the Property, rents and/or liabilities pertaining to the Property, to open all mail and other

7    correspondence received in connection with the Property whether addressed to Defendant

8    or otherwise, to access all office equipment used by Defendant in connection with the

9    development, construction, improvement, leasing, sales, marketing and/or conveyance of

10    the Property and the buildings thereon, including all computer equipment, all software

11    programs and passwords, and any other information, data, equipment or items necessary

12    for the operation of Defendant's business with respect to the Property, whether in the

13    possession and control of Defendant or its agents, servants or employees, provided,

14    however, that such books and/or records shall be made available for the use of the agents,

15    servants and employees of Defendant in the normal course of the performance of their

16    duties;

17    d.    To care for, preserve, and maintain the Property;

18    e.    To make any repairs to the Property that the Receiver, in his discretion deems

19    necessary or appropriate;

20    f.    To operate, manage, control and conduct the Property and its business and incur

21    the expenses necessary in such operation, management, control, and conduct in the

22    ordinary and usual course of business, and do all things and incur the risks and obligations

23    ordinarily incurred by owners, managers, and operators of similar enterprises, and no such

24    risks or obligations so incurred shall be the personal risk or obligation of Receiver, but

25    shall be a risk or obligation of the receivership estate;

26    g.    To change any and all locks on the Property and limit access thereto;

27    h.    To maintain, protect, collect, sell, liquidate, or otherwise dispose of the Property as

28    the Receiver determines in his sole discretion and without the need for further court order;

i. Without prior court approval, abandon Property the Receiver considers to be of little or not value to the receivership estate.

j. To develop, construct, market and lease the Property, or portions thereof;

k. Hire, on a contract basis, professionals, employees, real estate brokers, general contractors and other personnel necessary to manage, preserve, develop, construct, market, lease and sell the Property;

l. To employ or terminate the employment of any Nevada licensed person or firm to perform construction of on- and off-site improvements and buildings on or with respect to the property and to manage such construction work with respect to the Property;

m. To employ any person or firm to collect, manage, lease, maintain and operate the Property if the Receiver deems it necessary or appropriate in his discretion and judgment to do;

n. To hire, employ, retain and pay attorneys, certified public accountants, investigators, security guards, consultants, property management companies, brokers, construction management companies, brokers, appraisers, title companies, licensed construction control companies, and any other personnel or employees which the Receiver deems necessary to assist him in the discharge of his duties;

o. To retain environmental specialists to perform environmental inspections and assessments of the Property if deemed necessary and, if deemed necessary and advisable in the discretion of the Receiver, to remediate the Property or remove any dispose of contaminates, if any, effecting the Property;

p. To reject any lease or unexpired contract of the Defendant that is, in the Receiver's judgment, burdensome on the receivership estate;

q. To continue in effect any contracts presently existing and not in default relating to the Property;

r. To enter into and modify contracts affecting any part or all of the Property, including, without limitation, any and all leases affecting the Property.  In addition, the Receiver shall have the authority to immediately terminate any existing contract,

1  agreement, or instrument which is not, in Receiver's sole discretion, deemed commercially

2  reasonable or beneficial to the Property. The Receiver shall not be bound by any contract

3  between the Defendant and any third party that the Receiver does not expressly assume in

4  writing;

5  s.    To demand, collect and receive all rents, profits and income, which now or

6  hereafter may be derived from the Property, or any part thereof, including all proceeds in

7  bank accounts for the Property or in the possession of Defendant or other third parties

8  which are or were derived from the rents generated by the Property;

9  t.    Any security or other deposits which tenants have paid to Defendant or its agents

10  and which are not paid to the Receiver, and over which the Receiver has no control, shall

11  not be obligations of the Defendant, not the Receiver. Any other security or other deposits

12  which the tenants or other third parties have paid or may pay to the Receiver, if otherwise

13  refundable under the terms of their leases or agreement with the Receiver, shall be

14  expenses of the subject property and refunded by the Receiver in accordance with the

15  leases or agreements;

16  u.    To bring and prosecute all proper actions for the (i) collection of rents derived

17  from the Property, (ii) removal from the Property of persons not entitled to entry thereon,

18  (iii) protection of the Property, (iv) damage caused to the Property; and (v) recovery of

19  possession of the Property, all without prior Court approval;

20  v.    To maintain adequate insurance over the Property to the same extent and in the

21  same manner as it has heretofore been insured, or as in the judgment of Receiver may

22  seem fit and proper, and to cause all presently existing policies to be amended by adding

23  Receiver and the receivership estate as an additional insured within 10 days of the entry of

24  this Order. During any period in which the Property is uninsured or underinsured,

25  Receiver shall not be personally responsible for any claims arising therefore. No

26  insurance company may cancel its existing current-paid policy as a result of the

27  appointment of the Receiver, without prior order of this Court;

28  w.    To open and utilize bank accounts for receivership funds;

x.      To present for payment any checks, money orders or other forms of payment made payable to Plaintiff which constitute rents of the Property, endorse same and collect the proceeds thereof, such proceeds to be used and maintained as elsewhere provided herein;

y.      To borrow from Plaintiff or third parties, funds required to continue the operation of the existing business and/or when current income is insufficient to meet expenses, upon such terms as deemed reasonable by the Receiver.  Nothing in this Order shall obligate Plaintiff to provide such fund; however, Plaintiff, or other lending party, shall be entitled to the issuance of a Receiver's Certificate, in accordance with Section 12 of this Order, should any loans or advances be made by said lending party to the Receiver;

z.      To pay and discharge out of the funds coming into his hands all the expenses of the receivership and the costs and expenses of operation and maintenance of the Property, including all Receiver's and related fees, taxes, governmental assessments and charges and the nature thereof lawfully imposed upon the Property;

aa.     To have the power to advance funds to keep current any liens, if any, taxes and assessments encumbering the Property which are senior to any lien arising under the Deed of Trust;

bb.     To pay all necessary insurance premiums for such insurance and all taxes and assessments levied on the Property during the receivership;

cc.     To expend funds to purchase merchandise, construction and other materials, supplies, advertising and other services as the Receiver deems necessary and advisable to assist him in performing his duties hereunder and to pay therefore the ordinary and usual rates and prices out of the funds that may come into the possession of the Receiver;

dd.     The Receiver shall not be obligated to file any federal or state income tax returns, schedules or other forms, which continue to be an obligation of the Defendant.

ee.     To apply, obtain and pay any reasonable fees for any lawful license, permit or other governmental approval relating to the Property or the operation thereof; confirm the existence of any existing license or permit or the operation thereof, and do all things necessary to protect and maintain such licenses, permits and approvals;

ff.     To notify all local, state and federal governmental agencies, all vendors and suppliers, utility companies (including gas, electricity, water, sewer, trash collection, telephone, communications or similar services), and any and all others who provide goods or services to the Property of his appointment as Receiver.

    i.     No utility may terminate service to the Property as a result of non-payment of pre-receivership obligations without prior order of this Court.

    ii.     Such utilities shall transfer any deposits held by the utility to the exclusive control of the Receiver and be prohibited from demanding that the Receiver deposit additional funds in advance to maintain or secure such services.

    iii.     New accounts under the name of the receivership shall be established within 30 days. Utility companies are prohibited from discontinuing service while the new receivership accounts are in process of being established.

gg.     To obtain copies of any and all plans, specifications and drawings pertaining to or effecting any part or all of the Property and to be authorized to obtain such plans, specifications and drawings from Plaintiff, from architects and contractors retained or formerly retained by Plaintiff, or from the city, municipality, county or state on which such property is situated if the Receiver deems it necessary or advisable in his discretion to do so; and

hh.     To generally do such other things as may be necessary or incidental to the foregoing specific powers, directions and general authorities and take actions relating to the Property beyond the scope contemplated by the provisions set forth above, provided the Receiver obtains prior court approval for any actions beyond the scope contemplated herein.

5.     RECEIVER'S QUARTERLY REPORT: The Receiver shall prepare, on a quarterly basis commencing 30 days after his appointment so long as the Property shall remain in his possession or care, reports setting forth all receipts and disbursements, cash flow, changes in the assets in his charge, claims against the assets in his charge, and other relevant operational issues that have occurred during the preceding month. The Receiver is directed to file such

FENNEMORE CRAIG, P.C.
LAS VEGAS

LAS/MHURTADO/122173.2/029705.0001

1  reports with the Clerk of this Court. The Receiver shall serve a copy of this report on the

2  attorneys of record for the Parties and any other interested parties who request the same.

3        6.     RECEIVER'S FINAL REPORT AND ACCOUNT: As soon as is practicable

4  after the receivership terminates, the Receiver shall file, serve, and set for hearing in this Court

5  his final report and accounting. Notice shall be given to all persons whom the Receiver has

6  received notice of potential claims against the receivership estate. The motion to approve the

7  final report and accounting shall contain a summary of the receivership accounting including

8  enumeration, by major categories, of total revenues and total expenditures, the net amount of any

9  surplus or deficit with supporting facts, a declaration under penalty of perjury of the basis for the

10  termination of the receivership, and evidence to support an order for the distribution of any

11  surplus, or payment of any deficit, in the receivership estate.

12        7.     RECEIVER'S FEES: The Receiver shall charge the rates set forth in Plaintiff's

13  Verified Application for Appointment of Receiver on file herein. In addition, the Receiver shall

14  be reimbursed for all expenses incurred by the Receiver on behalf of the Property.

15        8.     PAYMENT TO RECEIVER: The Receiver, his management company, his

16  consultants, agents, employees, legal counsel, and professionals shall be paid by the Receiver on

17  a monthly basis.

18        9.     REMAINING FUNDS TO BE PAID TO PLAINTIFF: After expending the

19  necessary funds to operate the Property, paying all reasonable and necessary costs and expenses

20  associated with such operation, withholding an amount not to exceed $5,000 per month from the

21  rents as a reserve for future obligations, and paying the Receiver's Fees, the Receiver shall pay to

22  Plaintiff, the remaining funds to be applied by the Plaintiff in accordance with the terms of that

23  certain Acquisition and Development Loan Agreement (the "Loan Agreement") and its

24  corresponding Note and related Loan Documents as identified in the Verified Complaint.

25        10.    SALE OF PROPERTY:

26        a.     The Receiver is authorized and directed, in its sole and absolute discretion, and the

27        Court appoints and makes the Receiver the Defendant's attorney in fact, for the sole

28        purpose of selling of the Property on behalf of, and in the name of, Defendant, so long as

Plaintiff shall have first consented to such sale, which may be withheld in Plaintiff's sole and absolute discretion. The Receiver shall have the following authority with respect to the sale of the Property:

    i.    To do and perform all and every act desirable, proper or necessary including, without limitation, to convey title, execute and deliver deeds of conveyance, bills of sale, closing statements, certificates and affidavits, and all other documents necessary or desirable to transfer the Property and obtain title insurance, all on behalf of, and in the name of, Defendant; and

    ii.    To select, with Plaintiff's written approval, a title company.

b.    The Receiver shall be the exclusive disposition agent, but may retain the services of one or more real estate agents ("Brokers") to assist in the marketing and sale of the Property, so long as Plaintiff consents in writing to the retention of the Receiver's desired Broker(s).

c.    After closing on the sale of any of the Property, the Receiver shall include in the Receiver's Report, with respect to the Property sold, the sale price and the date of the sale.

d.    The "Net Proceeds" of the sale of the Property shall be the gross sales price of the Property less closing costs, title insurance, prorations, sales commissions and other adjustments approved by the Receiver and Plaintiff.

e.    The Net Proceeds of the sale of the Property shall be disbursed as follows:

    i.    First, for payment of any unpaid fees and expenses of the Receiver, if any; and

    ii.    Second, to Plaintiff, for amounts due under its loan;

    iii.    Any remaining sums shall be held by the Receiver pending further order of this Court.

11.    DISCHARGE: Immediately upon the completion of a valid foreclosure sale of the Property by Plaintiff, or any assignee thereof, or upon the acquisition of the Property by Plaintiff or any third party, or any assignee by deed in lieu of foreclosure, and without further order of the court, the Receiver shall be discharged from all further duties, liabilities and responsibilities

1  relating to the Property with the sole exception of the Receiver's obligation to file and serve its

2  Final Report and Account as stated in Section 6 above.

3       12.    RECEIVER'S CERTIFICATES:  In the event that income from the operation of

4  the Property is insufficient to meet normal operating expenses and costs, the Receiver is

5  authorized to borrow money and to issue Receiver's Certificates to secure such indebtedness.

6  The total amount of all monies borrowed and Receiver's Certificates issued shall not exceed One

7  Hundred Thousand Dollars ($100,000.00) without further order of this Court.

8       13.    NON-INTERFERENCE WITH RECEIVER: Defendant, including, without

9  limitation, Defendant's agents, representatives and employees, and all lessors, lessees, customers,

10  principals, investors, suppliers and/or creditors are enjoined from:

11       a.    Interfering with the Receiver, directly or indirectly, in the management and

12       operation of the Property;

13       b.    Interfering with the Receiver, directly or indirectly, in the collection of rents

14       derived from the Property;

15       c.    Collecting or attempting to collect the rents derived from the Property. The

16       Tenants occupying, using or leasing the Property, or any portion thereof, shall now make

17       all such payments to the Receiver;

18       d.    Extending, dispersing, transferring, assigning, selling, conveying, devising,

19       pledging, mortgaging, creating a security interest in or disposing of the whole or any part

20       of the Property (including the rents thereof) without the prior written consent of the

21       Receiver; provided, however, that nothing contained in this Order shall prohibit or restrain

22       Plaintiff from initiating and/or completing a sale by judicial or non-judicial foreclosure of

23       the Property, or any portion thereof, and thereafter taking title and possession thereto; and

24       e.    Doing any act which will, or which will tend to, impair, Defeat, divert, prevent or

25       prejudice the preservation of the Property (including the Rents thereof) or the interest of

26       Plaintiff in the Property and in said rents.

27       14.    TURNOVER: Defendant and its members, managers, guarantors, agents, property

28  managers, architects, contractors, subcontractors and employees, and all other persons with actual

FENNEMORE CRAIG, P.C.
LAS VEGAS

LAS/MHURTADO/122173.2/029705.0001

- 10 -

or constructive knowledge of this Order and their agents and employees, shall immediately:

    a.    Turn over to the Receiver the possession of the Property, including all keys to all locks on the Property, leases, and the records, books of account, ledgers and all business records for the Property (including, without limitation, construction contracts and subcontracts, the plans, specifications and drawings relating to or pertaining to any part or all of the Property), wherever located in and whatever mode maintained (including, without limitation, information contained on computers and any and all software relating thereto as well as all banking records, statements and canceled checks), and provide Receiver with all passwords needed to access all records and files maintained on any computer located on the Property, or any other computers on which such information is stored, together with passwords needed to access Defendant's e-mail account, and all other business records relating to the Property;

    b.    Turn over to the Receiver all documents which constitute or pertain to all licenses, permits or governmental approvals relating to the Property and shall immediately advise the Receiver of Federal and State taxpayer identification numbers used in connection with the operation of the Property;

    c.    Turn over to the Receiver all documents which constitute or pertain to insurance policies, whether currently in effect or lapsed which relate to the Property;

    d.    Turn over to the Receiver all contracts, leases and subleases, royalty agreements, licenses, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to any interest in the Property;

    e.    Turn over to the Receiver all documents pertaining to past, present or future construction of any type with respect to all or any part of the Property;

    f.    Turn over to the Receiver all documents of any kind pertaining to any and all toxic chemicals or hazardous material, if any, ever brought, used and/or remaining upon the Property, including, without limitation, all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices;

    g.    Nothing herein is intended to, nor is to be construed to, require Defendant to turn

1    over any documents protected from disclosure by either the attorney-client privilege or the

2    attorney work product privilege; and

3        h.    Turn over to the Receiver all rents derived from the Property (including, without

4    limitation, all security deposits (except as otherwise provided in the Settlement

5    Agreement), advances, prepaid rents, funds in property management bank accounts or

6    other depository accounts from the Property, storage fees, and parking fees) wherever and

7    whatsoever mode maintained.

8        15.    RECEIVER'S CAPACITY: The Receiver and his agents and employees are

9    acting solely in their capacity as Receiver, and the debts of the Receiver are solely the debts of the

10   Defendant. In no event shall Receiver or his agents or employees personally have any liability or

11   obligations for the debts of the Receiver, the Property, or the Defendant.

12       16.    FURTHER ORDERS / MISCELLANEOUS MATTERS:

13       a.    The Receiver or Plaintiff may at any time apply to this court for any further or

14   other instructions and powers necessary to enable the Receiver to perform his

15   duties properly. The Court may grant any order requested by the Receiver,

16   without further notice of hearing, if no objection or opposition is filed with the

17   Court and served on the Receiver within ten (10) judicial days after filing and

18   service of the Receiver's request.

19       b.    No person or entity shall file suit against the Receiver, or take other action against

20   the Receiver, without an order of this Court permitting the suit or action provided,

21   however, that no prior court order is required to file a motion in this action to

22   enforce the provisions of this Order or any other order of this Court in this action.

23       c.    The receivership estate and its employees, agents, attorneys and all professionals

24   and management companies retained by the Receiver shall have no liability for

25   any obligations or debts incurred by Defendant. The Receiver and its employees,

26   agents and attorneys shall have no personal liability, and they shall have no claim

27   asserted against them relating to the performance of the Receiver's duties as stated

28   herein.

FENNEMORE CRAIG, P.C.
LAS VEGAS

LAS/MHURTADO/122173.2/029705.0001

1        d.  Plaintiff shall indemnify, defend and hold harmless from all suits in connection

2            with the Property and from any and all liability, including for damages to property

3            and injury or death related to the Property, except for liability arising out of the

4            Receiver's willful misconduct or gross negligence that is not the result of

5            Defendant or Plaintiff's instruction or direction.

6        IT IS SO ORDERED.

7        DATED: _____.

8

9

10                                    _____
                                      DISTRICT COURT JUDGE

11    Respectfully submitted by:

12    FENNEMORE CRAIG, P.C.

13

14    By: _____
              Laurel E. Davis (No. 3005)
15            David W. Dachelet (No. 6615)
              300 S. Fourth Street, Suite 1400
16            Las Vegas, Nevada 89101

17    Attorneys for Plaintiff
      METEJEMEI, LLC
18

19

20

21

22

23

24

25

26

27

28

FENNEMORE CRAIG, P.C.
LAS VEGAS

LAS/MHURTADO/122173.2/029705.0001

- 13 -

# EXHIBIT 3

Fennemore Craig, P.C.
Laurel E. Davis (NV Bar No. 3005)
300 South Fourth Street, Suite 1400
Las Vegas, Nevada 89101
Telephone: (702) 692-8000
E-mail: ldavis@fclaw.com

Counsel for METEJEMEI, LLC

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Chapter 11 |
| PARK CENTRAL PLAZA 32, LLC, | Case No. BK-S-11-14153-BTB |
| Debtor. | |
| | **Hearing Date:** September 6, 2011<br>**Hearing Time:** 1:30 p.m.<br>**Location:** 300 Las Vegas Blvd. South<br>Courtroom #4<br>Las Vegas, Nevada 89101 |

## ORDER GRANTING METEJEMEI, LLC RELIEF FROM THE AUTOMATIC STAY

The Court having granted the Motion for Entry of an Order Approving the Settlement and Release Agreement with METEJEMEI, LLC Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Settlement Motion"). Pursuant to the Settlement Motion, METEJEMEI, LLC is entitled to immediate entry of an Order granting relief from the automatic stay of 11 U.S.C. § 362(a) with respect to the real property with a commonly known address of 5700-5990 Losee Road, North Las Vegas,

Nevada 89081 (the "Property"), as more particularly described in the legal description attached as Exhibit 1, and other good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND AGREED:

1.    METEJEMEI, LLC is hereby granted relief from the automatic stay of 11 U.S.C. § 362(a), to enforce all of its contractual and state law rights and remedies including, but not limited to:

(a)    Commencement and conclusion of a non-judicial foreclosure sale regarding the Property; and

(b)    All actions necessary to seek and obtain the ex parte appointment of a state court receiver for the Property.

2.    This Order shall be binding and effective as of the date and time of the hearing.  The fourteen-day stay of execution of this Order Pursuant to Bankruptcy Rule 7062 is dispensed with.

SUBMITTED BY:

**FENNEMORE CRAIG, P.C.**


By ___/s/ Craig S. Dunlap_____
    Laurel E. Davis
    Craig S. Dunlap

Counsel for METEJEMEI, LLC

###

FENNEMORE CRAIG, P.C.
LAS VEGAS

**ALTERNATIVE METHOD RE: RULE 9021:**

**LR 9021 CERTIFICATION**

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

_____ The court has waived the requirement set forth in LR 9021(b)(1).

_____ No party appeared at the hearing or filed an objection to the motion.

__X__ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:

|  | APPROVED | DISAPPROVED | NO RESPONSE |
|---|---|---|---|
| Bob L. Olson<br>Greenberg Traurig, LLP<br>Counsel for Debtor | X |  |  |

_____ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.

_____
An Employee of Fennemore Craig, P.C.

FENNEMORE CRAIG, P.C.
LAS VEGAS

LAS/LDAVIS/122520.1/029705.0001

# EXHIBIT 1

EXHIBIT "A"

Real property in the County of Clark, State of Nevada, described as follows:

Parcel 1:

A portion of Lot 1 as shown in that certain Final Map of the "Park Central Plaza Commercial Subdivision" recorded in Book 123, page 14 of Plats on file at the Clark County, Nevada Recorder's Office, lying within the West Half (W ½) of the Southwest Quarter (SW ¼) Of Section 25, Township 19 South, Range 61 East, M.D.M., City of North Las Vegas, Clark County, Nevada, described as follows:

Commencing at the Northwest corner of said West half (W ½) being the centerline intersection of Tropical Parkway and Losee Road as shown on said final map; Thence along the North line of said West Half (W ½) and centerline of said Tropical Parkway, North 89°04'26" East, 603.9 feet, thence departing the North line of said West Half (W ½) and said centerline of Tropical Parkway, South 00°02'28" West, 40.26 feet to a point on the South right-of-way of said Tropical Parkway being the point of beginning;

thence departing the South right-of-way of said Tropical Parkway, South 00°02'28" West, 67.37 feet; thence North 89°57'32" West, 20.00 feet thence South 00°02'28" West. 81.00 feet; thence South 89°54'02" West. 41.00 feet; thence South 00°02'28" West. 195.75 feet; thence North 89°57'32" West, 191.00 feet; thence North 00°02'28" East, 43.85 feet; thence North 89°57'32" West, 119.00 feet; thence South 00°02'28" West. 31.00 feet; thence North 89°59'29" West, 177.00 feet to the Easterly right-of-way of said Losee Road; thence along said Easterly right-of-way the following five (5) courses:

(1)     North 00°02'28" East, 80.60 feet to the beginning of a curve, concave Easterly, having a radius of 95.00 feet;
(2)     Northerly along said curve, through a central angle of 18°11'42", an arc length of 30.17 feet to the beginning of a reverse curve concave Westerly, having a radius of 105.00 feet, through which a radial line bears North 71°45'50" West;
(3)     Northerly along said curve through a central angle of 18°11'42", an arc length of 33.34 feet, to a point of tangency;
(4)     North 00°02'28" East, 121.50 feet to the beginning of a curve, concave Southeasterly, having a radius of 54.00 feet;
(5)     Northeasterly along said curve, through a central angle of 89°01'58", an arc length of 83.91 feet to the South right-of-way line of said Tropical Parkway;

Thence along said Southerly right-of-way the following six (6) courses:

(1)     North 89°04'26" East, 3.27 feet;
(2)     South 80°43'06" East, 56,43 feet;
(3)     North 89°04'26" East, 87.19 feet;
(4)     North 71°57'34" East, 33.98 feet;

5

(5)    North 89°04'26" East, 93.07 feet;
(6)    North 87°48'03" East, 213.57 feet to the point of beginning.

Said legal being Parcel 1 as shown on that certain Record of Survey filed April 17, 2006 by Horizon Surveys, in File 155, page 93 in the Office of the County Recorder of Clark County, Nevada.

Parcel 2:

A portion of Lot 1 as shown in that certain Final Map Of The "Park Central Plaza Commercial Subdivision" recorded in Book 123, page 14 of Plats on File at The Clark County, Nevada Recorder's Office, lying within The West Half (W ½) of the Southwest Quarter (SW ¼) of Section 25, Township 19 South, Range 61 East, M.D.M., City of North Las Vegas, Clark County, Nevada, described as follows:

Commencing at the Northwest corner of said West Half (W ½), being the centerline intersection of Tropical Parkway and Losee Road as shown on said final map; thence along the North line of said West Half (W ½) and centerline of said Tropical Parkway, North 89°04'26" East, 653.61 feet;

thence departing the North line of said West Half (W ½) and centerline of said Tropical Parkway, South 00°02'28" West, 40.01 feet to the Southerly right-of-way of said Tropical Parkway, being the Northeast corner of said Lot 1;

thence departing said Southerly right-of-way, along the Easterly boundary of said Lot 1, South 00°02'28" West, 467.84 feet to the beginning of a curve, concave Westerly, having a radius of 680.00 feet, thence Southerly along said curve, through a central angle of 13°02'34", an arc length of 154.79 feet to the point of beginning;

thence continuing Southerly along said curve and Easterly boundary of Lot 1, through a central angle of 16°09'48", an arc length of 191.83 feet to the beginning of a reverse curve, concave Easterly, having a radius of 250.00 feet, through which a radial line bears South 60°45'10" East; thence Southerly along said curve through a central angle of 93°44'59", an arc length of 409.06 feet to a point of tangency;

thence South 64°30'09" East, 254.77 feet to the Northwesterly right-of-way of Ann Road being the beginning of a non-tangent curve, concave Northwesterly, having a radius of 1,780.00 feet, from which beginning the radius bears North 64°30'09" West; thence along the Northwesterly right-of-way of said Ann Road the following seven (7) courses:

(1)    Southwesterly along said curve, through a central angle of 23°09'02", an arc length of 719.22 feet to a point which a radial line bears South 41°21'08" East, said point being the beginning of a non-tangent curve, concave Northwesterly, having a radius of 1,761.30 feet, from which beginning the radius bears North 40°03'38" West;

(2)    Southwesterly along said curve, through a central angle of 07°06'33", an arc length of 218.54 feet to the beginning of a compound curve, concave Northwesterly, having a radius of 95.00 feet;

6

(3)    Southwesterly along said curve, through a central angle of 17°45'56", an arc length of 29.46 feet, to the beginning of a reverse curve, concave Southeasterly, having a radius of 105.00 feet, through which a Radial line bears South 15°11'09" East;

(4)    Southwesterly along said curve, through a central angle of 17°11'05", an arc length of 31.49 feet to the beginning of a reverse curve, concave Northwesterly, having a radius of 1,765.00 feet, through which a radial line bears North 32°22'14" West;

(5)    Southwesterly along said curve, through a central angle of 00°45'51"; an arc length of 23.54 feet;

(6)    South 58°23'37" West, 76.39 feet to the beginning of a curve, concave Northeasterly, having a radius of 70.00 feet;

(7)    Northerly along said curve, through a central angle of 121°38'51", an arc length of 148.62 feet to the Easterly right-of-way of said Losee Road;

Thence along the Easterly right-of-way of said Losee Road the following seven (7) courses:

(1)    North 00°02'28" East, 31.79 feet;

(2)    North 10°14'56" East, 56.43 feet;

(3)    North 00°02'28" East, 87.19 feet;

(4)    North 17°04'24" West, 33.98 feet;

(5)    North 00002)28) East, 93.07 feet;

(6)    North 01°13'55" West, 225.08 feet;

(7)    North 0000228 East, 845.25 feet,

Thence departing said right-of-way, South 89°57'32" East, 301.00 feet; thence South 00°02'28" West, 16.67 feet; thence South 89°55'39" East. 284.97 feet to the point of beginning.

Said legal being Parcel 3 as shown on that certain Record of Survey filed April 17, 2006 by Horizon Surveys, in File 155, page 93 in the Office of the County Recorder of Clark County, Nevada.

7